ORIGINAL

Benedict O'Mahoney (SBN 152447)
Teknowledge Corporation
1800 Embarcadero Road
Palo Alto, CA 94404

Plaintiff

FILED
APR 24 2006
U.S. COURT OF
FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

TEKNOWLEDGE CORPORATION,

Plaintiff,

vs.

THE UNITED STATES,

Defendant

NO.: 06-310 C

**COMPLAINT**

Plaintiff Teknowledge Corporation ("Teknowledge") brings this Complaint against the United States ("Government"), alleging as follows:

**PARTIES**

1. Teknowledge is a Delaware corporation, having an office and principal place of business at 1800 Embarcadero Road, Palo Alto, CA 94303.

2. Government is the Defense Contract Management Agency ("DCMA"), 1380 Lead Hill Boulevard, Suite 260, Roseville, California 95661-2998.

**JURISDICTION**

3. Jurisdiction is conferred on this court pursuant to the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C § 601 et seq., and 28 U.S.C. §1491(a)(1) and (2). The claim and its counts are based upon express written contracts with the United States of America and Contracting Officer's Final Decision issued under the CDA as described below.

4. The contracts under which the dispute has arisen are SPAWARSYSCEN Contract Numbers N66001-98-C-8500, N66001-98-D-8506, and N66001-00-C-8074, and Rome Labs Contract Numbers F30602-97-C-0145, F30602-99-C-0138, F30602-00-C-0164, F30602-00-C-0057, 00-C-0160-05, 57716, F30602-00-C-0200, F30602-00-C-0202, 57715, F30602-00-C-0171, F30602-00-C-0218, 57804, and 57798 (hereinafter the "Contracts").

**STATEMENT OF THE CASE**

5. Teknowledge commenced developing innovative software in 1981. Beginning in the mid-1980s, Teknowledge began to develop software to support various DARPA proposals. Much of the software that was developed since then was "dual use', providing useful capabilities to both commercial and government customers.

**A. TekPortal Development**

6. Teknowledge began development of TekPortal in 1999. Since that time, Teknowledge has spent over $10 million to

develop TekPortal. In 2001, Teknowledge spent $885,430 developing TekPortal.

7. Teknowledge's accounting practice is to charge a reasonable percentage of the development effort related to dual use software to its government overhead pool and to account for that cost pursuant to Statement of Financial Accounting Standards (SFAS) No. 86, *Accounting for the Costs of Computer Software to Be Sold, Leased or Otherwise Marketed.*

8. Teknowledge intended TekPortal to be dual use software for use by both commercial and government customers. Consequently, the company conservatively allocated 30% of 2001 amortized software development costs to the government overhead pool and 70% to the commercial overhead pool.

**B. <u>TekPortal Government Marketing Efforts</u>**

9. In December, 2001, Teknowledge responded to the Undersecretary of Defense's request ITSWG 02-Q-4655 for innovative solutions in 38 different technology areas. In its proposal, Teknowledge referred to TekPortal as the infrastructure base for "TerrorPortal", a product to permit government agencies to track the finances of terror suspects and foreign intelligence operations.

10. In 2002, Teknowledge responded to a request from the Advanced Project Research Agency for proposals relation to Novel Intelligence from Massive Data. Teknowledge proposed the use of TekPortal to address the government's stated needs for

collecting and analyzing massive amounts of information relevant to terrorist operations.

11. In 2005, Teknowledge responded to BAA-06-02-IFKA for Collaboration and Analyst/System Effectiveness. Teknowledge submitted a whitepaper proposal for an analyst-directed variant of Teknowledge's blackboard-based intelligence funnel, using TekPortal as a source of financial data feeds.

**C. Government's Notice of Intent to Disallow Costs**

12. On December 21, 2004, the Defense Contract Audit Agency (the "DCAA") issued a draft audit Report No. 04281-2001A10100024 (the "Draft Audit") which reviewed Teknowledge's Calendar Year 2001 Incurred Costs, both direct and indirect. In this audit, DCAA proposed to disallow the allocation of amortized software development costs of $273,776 to the Teknowledge government overhead pool, and further proposed to reclassify these costs to the G&A base as direct product costs. This report also proposed to disallow certain other costs from Teknowledge's indirect rates.

13. On January 21, 2005, Teknowledge responded to the draft audit (the "Teknowledge Initial Response")indicating that the software in question was dual use intended for both government and commercial use, and that its allocation was appropriate under SFAS No. 86.

14. On February 3, 2005, the DCAA issued the final audit, Report No. 04281-2001A10100024 (the "Audit Report"). This Audit

Report was entitled "Report on Audit of Federal Indirect Cost Rates and Direct Costs for Calendar Year 2001." The Audit Report did not accept Teknowledge's justification, and disallowed the allocation of amortized software development costs to the overhead pools, and reclassified those costs to the G&A base as direct product costs. This report also indicated that certain other direct and indirect costs would be disallowed.

15. After some interaction between the parties on this issue, on July 25, 2005, the DCMA issued a Contracting Officer's Initial Intent to Disallow Costs which served notice that the DCMA would disallow the allocation of amortized software development costs to the overhead pools along with certain other costs.

16. On November 15, 2005, Teknowledge submitted to the DCMA a report from a financial expert which indicated that the software amortization and its allocation was appropriate under SFAS No. 86.

17. On January 19, 2006, the DCMA issued a Contracting Officer's Final Decision and Demand ("Final Decision"). This Final Decision did not accept the justification proffered by Teknowledge's expert, and confirmed the disallowance of the allocation of amortized software development costs to the government overhead pool, and reclassification of those costs to the G&A base as direct product costs. The Final Decision

further added the related G&A costs and Cost of Money resulting from the disallowance yielding a total disallowance of $285,656.

**COUNT I**

**(Improper Disallowance - Cost of Software Amortization)**

18. Teknowledge re-alleges and incorporates herein each of the foregoing paragraphs of this complaint as if repeated.

19. FAR § 31.202 defines "Direct Costs" as a cost that can be identified exclusively with a particular final cost objective.

20. FAR § 31.203 and FAR § 31.205-18 provide that a cost not required to be classified as a direct cost should be classified as an indirect cost.

21. Teknowledge's Software Amortization costs are not direct costs under the FAR § 31.202.

22. The contracting officer's final decision that the Software Amortization costs are direct costs of the Financial Services overhead pool and not allocable to and recoverable under the Contracts is improper under FAR.

23. Teknowledge is entitled to account for 31% of the Software Amortization costs as indirect costs of the government overhead pool in the amount of $285,656.

**PRAYER FOR RELIEF**

WHEREFORE, Teknowledge respectfully requests the Court for the following relief:

24. That this Court enter judgment under Count I that the contracting officer's decision dated January 19, 2006 that Teknowledge must account for all Software Amortization costs as direct costs of the Financial Services overhead pool is improper, and that Teknowledge may, pursuant to the FAR, account for 31% of the Software Amortization costs as indirect costs of the government overhead pool and recover those costs; and

25. That this Court award to Teknowledge such other relief ad the Court deems proper.

Dated this 20th day of April, 2006

By: ____________________
Benedict O'Mahoney