# TEKNOWLEDGE

March 21, 2005

John T. Palmer, ACO
P.O. Box 232
DCMA Building 300
French Camp, Ca 95231-0232

RE: 2001 Audit Report. Teknowledge response

Dear Mr. Palmer:

We appreciate the opportunity to talk with your regarding the issues that face Teknowledge today. I would like to take a moment to go over Teknowledge's long history of contracting with the Federal government. We won our first contract back in 1986 and we have won approximately 100 contracts since that time. As a small business, it is not surprising that most of our contracts have been relatively small by government standards (in the $500,000 range), but we have performed honorably as both a prime contractor and subcontractor with several "Who's Who" in the government-contracting arena. The bulk of our contracts are with DARPA on next-generation software technology projects that we have delivered successfully over the years. Our reputation in the DARPA community has always been good, and we have regularly volunteered our time to help DARPA, NRO, PEOSTRI, NAS, ARI, and others plan future initiatives and help guide the direction of US R&D in the 21st Century. As a small business (not CAS covered), with 35 employees, we don't have the clout of our larger competitors, nor can we afford the extended legal expenses to respond to disputes that we believe we could win if we had deeper pockets. We have to rely on our own honest and forthright approach to accounting issues, and the ultimate thoughtfulness and fairness of the government in adjudicating any differences. We have always had a good relationship with the government, and we sincerely believe that we have presented fair and thoughtful rationales for the issues we list below. Unfortunately, thus far, we feel that we have been treated with the inflexibility that a large customer might use with small vendors: "might makes right." The problem is that this attitude is short sighted, and it doesn't optimize the return on the government's two decade long investment in Teknowledge's technical know how and talent.

There are two key issues hanging over our head that are threatening the viability of our 23 year old company, and the lives of all of its employees: 1) the accounting treatment of subcontractor costs, and 2) the allocation of development costs for software that can be dual use for commercial and government applications. The former issue represents a rate recovery of approximately $750,000 to the Company for the years 2001-2003, and the latter, a potential cost payback of approximately $1,500,000 for years 2001-2004. Note that although Teknowledge has mostly cost type contracts, in no case are we asking for funds above the original contract values approved by our technical customers.

Accounting treatment of subcontractor costs (2001-2003)

Prior to 2000, subcontract costs supported a single business line of government research and development contract work and were included in the G&A cost allocation base, thereby receiving a pro rata allocation of G&A costs. As a result of rapid growth in Teknowledge's products and services, particularly in the commercial business unit, this treatment produced a disproportionate allocation of executive and administrative costs to outside subcontractors far out of proportion to the benefits they receive from this support group. Subcontractors are not employees of the Company nor do they receive any of the benefits entitled to regular employees. Furthermore, given the nature of their work as outside contractors (writing code to Teknowledge's specifications), they receive little to no attention from executive staff, human relations, sales and marketing, legal, purchasing, or accounting—duties typically aligned with inside staff.

In the second quarter of 2004, Teknowledge requested and received permission from the DCAA to separate the subcontractor costs for 2004 into a separate pool. They accepted our rationale going forward – because it is reasonable. Later in 2004, Teknowledge requested similar treatment for the open and unaudited years of 2002-2003. The reason was that during those years, over $3 million of subcontractor costs or approximately 20% of our G&A base was identified with subcontractors. The Company felt it was within its rights to ask for an examination of the indirect costs guidance under FAR 31.203(d)(2) if "significant changes occur in the nature of the business, the extent of the subcontracting, fixed asset improvement programs, inventories..." Looking back to the earlier years, Teknowledge grossly underestimated the growth potential of its subcontracting services. Had the impact on G&A been clearly understood, Teknowledge would have applied for retroactive treatment earlier; however, it wasn't until later when Teknowledge employed expert outside accounting advice that its full impact was communicated to management. Although we were late in recognizing the problem, the FAR does in fact provide for relief under these circumstances. As far as we can tell, DCAA's reason for denying our request is that they are reluctant to "look back". However, it is the right thing to do, given that these years are still open, and the FAR would support it. We acknowledge the hassle of looking back, but we are looking back on other items to do the final audit; why not this one? Both of our issues may make a life or death difference in our business. Given our two decades of service to the government, why wouldn't the government be willing to work with us, and do what it could that was both reasonable and supportable?

Treatment of Software Development Costs

During the fourth quarter of 2004, the government issued a preliminary audit report and findings for the overhead costs incurred in 2001. The DCAA questioned the Company's treatment of software development costs for software that has meaningful dual-use application in both the commercial and government segments of our business. To be clear about this, one of the key functions of this software is information aggregation from distributed data sources. We think that this software has excellent potential for use by government agencies that need to aggregate various types of information. For example, the DoD, DHS, and the intelligence community need to be able to aggregate all kinds of information about people either in a foreign country or in the US. Take the case of aggregating information on a distributed terrorist cell. This information might include images of members of the cell taken at different times and places, and these images may consist of digital photos placed in different agency intranets in different formats. We know that our TekPortal software can be used to aggregate images because we tried this for a commercial customer that wanted to aggregate images from different commercial photo web sites. Likewise, the TekPortal software can also be used to aggregate financial information on the terror cell members from 5500 financial institutions. This aggregation includes checking and savings accounts, credit card transactions, and drill down on financial transaction histories. We know that terror cells use both banking and non-banking money transfer methods. But if you look at the history of several attacks in the US, it would have helped a great deal to have image aggregation and financial aggregation on just the suspects we were already watching. Our TekPortal software was built for this kind of dual use application. So, you can understand how frustrating it is to be told by the DCAA that our TekPortal software has commercial application only. When aerospace companies build dual use planes, the dual-use of their machines are taken for granted. Software machines built of bits rather than molecules are treated differently, not because the principle is different, but because people don't understand it as well.

The Company allocated approximately 30% of 2001 amortized software development costs to the government segment and 70% to its commercial segment, which the company believed was a fair allocation to the government for the benefit from the technology developed in 2000. At the time the Version 1.0 product was originally developed, the company intended to sell its product to commercial and government customers, and provided evidence of this intent in 2001 with two technical proposals to the government. The Company does not believe that it has to demonstrate actual sales to the government to support the allocation, nor does it believe that amortization should be allocated as a direct cost, as the DCAA recommended.

The DCAA makes several claims in their response to Teknowledge's position about its treatment of TekPortal software development costs.

1. "Capitalized software costs shall be amortized on a product-by-product basis." TekPortal is a dual use product, so there is only one product to amortize.

2. "Amortization shall start when the product is available for general release to customers." TekPortal was indeed available to our government and commercial customers when we started amortizing it. We have software development records to support this statement.

3. "Production costs are allocable to TekPortal final cost objectives and not government contracts." This is an incorrect and old-fashioned view of dual use software cost objectives. It is appropriate to allocate costs to both government and commercial cost pools if we are targeting both of these markets for our TekPortal software sales. Teknowledge is primarily a research and development company, which historically has worked on government R&D projects for the majority of its revenues and cost basis. The Government has frequently stressed the need to utilize or adapt off-the-shelf commercial products (so-called COTS) as components in new defense software applications. Teknowledge's total costs of software product development for TekPortal greatly exceeded the costs allocated to the government.

4. The DCAA claimed that the government would have to pay twice for the products developed, but there are two points against this being an issue. First, the aerospace industry often develops its planes with government support for development costs, and then it sells those planes at a discount to the government. Is that also paying twice for technology? The fact that Teknowledge builds its products in software vs. aluminum alloy should not cloud the principle here. Second, Teknowledge honestly believes that this software would be of immense value to DHS, DoD, and the intelligence community. In the spirit of working towards a completely reasonable and equitable solution to the current dispute, Teknowledge would be willing to provide the TekPortal aggregation software to the government on a worldwide basis **at no charge** for any application contract that we participate in. This would be a real win/win solution. We know that this software has huge and immediate value for homeland and defense security applications and just want to see it used.

We have continued to market the software to the government, but haven't landed an early adopter yet. This is not damning or surprising – we know by experience that truly new applications in the commercial or government world often take many years of marketing to potential customers before the first sale. Consider again the aerospace industry – the process takes years of interaction with and education of customers as to the merits of their product.

In addition, from equity to the government point of view, the development of Teknowledge's commercial financial software operation has already benefited the government greatly by absorbing close to three million dollars of total G&A costs since 2001. This is more than the amount under dispute, and a high percentage of these costs would have been allocated to government cost reimbursement contracts if Teknowledge had not embarked on its TekPortal software development efforts. Don't the underlying facts matter in trying to resolve this issue?

Teknowledge's expectation for developing and selling software to the government is reasonable given the Company's history of selling previously developed products to the government, going back to 1980's. The government utilized our M.1-M.4 software product extensively, with hundreds of applications developed by and for Air Force Wright Patterson alone. Therefore, it was reasonable to assume that the government would benefit in the development of Teknowledge's TekPortal software. Allocating 30% of the development costs was an appropriate consideration, based on Teknowledge's long history of product adoption by the government. This is also consistent with the government's keen new interest in encouraging government contractors to develop commercial products from internal R&D. In contrast to this trend, the DCAA excluded 100% of the development costs for TekPortal because they decided that it is an exclusively commercial product, and it has no final cost objectives related to government contracts. The Company believes this position discourages contractors from developing their products for dual use, and Teknowledge intends to contest the government's denial of these costs.

Please feel free to call me if you have any questions at 650-494-5461. Teknowledge has always acted in good faith in its contracting work, and we encourage open dialogue on items of mutual interest. In that spirit, we request a face to face meeting with you to discuss openly any questions that you may have about these matters.

Sincerely,

Dennis Bugbee
VP Finance and CFO
Teknowledge Corporation

cc: Neil Jacobstein, CEO Teknowledge