# In the United States Court of Federal Claims

No. 06-310C

(Filed: January 7, 2009)

```
*******************************  *
                                 *
TEKNOWLEDGE CORPORATION,         *
                                 *  Government Contract Cost
                    Plaintiff,   *  Principles; Allocability of
                                 *  Indirect Costs; Development of
v.                               *  Software Not Purchased by the
                                 *  Government; Failure to Show
THE UNITED STATES,               *  Nexus of Cost to a Government
                                 *  Contract; FAR 31.201-4.
                    Defendant.   *
                                 *
*******************************  *
```

*Benedict O'Mahoney*, Teknowledge Corporation, Palo Alto, California, for Plaintiff.

*David M. Hibey*, with whom were *Gregory G. Katsas*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Todd M. Hughes*, Deputy Director, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., for Defendant.

### OPINION AND ORDER ON
### CROSS-MOTIONS FOR SUMMARY JUDGMENT

WHEELER, Judge.

In this action under the Contract Disputes Act, 41 U.S.C. § 601 et seq. (2006), Plaintiff Teknowledge Corporation ("Teknowledge") challenges the Contracting Officer's January 19, 2006 final decision disallowing costs incurred in the development of its TekPortal software program. Before the Court are the parties' cross-motions for summary judgment pursuant to Rule 56 of the Rules of the Court of Federal Claims ("RCFC"). The agency involved is the Defense Contract Management Agency ("DCMA"). Defendant argues that the costs associated with developing the TekPortal software program are neither allocable to the Government nor allowable because the Government never purchased TekPortal, and any potential benefit to the Government is merely speculative. Plaintiff counters that the costs are allocable because they benefit the Government by allowing Teknowledge to remain viable as a company and by enabling its Commercial segment to absorb expenses that it would otherwise have charged to the Government. For the reasons

explained below, the Court finds that there are no genuine issues of material fact, and that Defendant is entitled to judgment as a matter of law.  Accordingly, Defendant's motion for summary judgment is granted, and Plaintiff's cross-motion for summary judgment is denied.

## Factual Background[1]

Teknowledge is an internet transaction company that provides service solutions that involve "processing application knowledge and conducting flexible and secure transactions over the Internet." (http://www.teknowledge.com/about/index.htm).  In 1999, Teknowledge began developing the TekPortal software program, a customer information aggregation service for the finance services industry.  (Stip. ¶ 4).[2]  The company intended for the TekPortal program to be dual use software for use by both commercial and governmental customers. (Pl.'s Resp. at 2).  At the time, Teknowledge had five business units within two reporting segments:  Commercial and Government.  (Stip. ¶ 2).  The Commercial segment included one operating unit, the FS operating unit, which oversaw the TekPortal program. Id.  Teknowledge accumulated indirect costs associated with the FS operating unit in its Commercial overhead pool.  Id.  The Government segment included four operating units, each of which performed work on government contracts, primarily in the area of research and development for the Navy.  Id. ¶ 3.

In 2001, Teknowledge amortized $885,430 in software costs related to the TekPortal program.  Id.  ¶ 4.  In accordance with company accounting practices, Teknowledge charged a "reasonable percentage" of the development efforts to the Government overhead pool and accounted for the cost in accordance with Financial Accounting Standards ("FAS") Number 86.  Id.  ¶ 6.  Specifically, the company allocated 69 percent of the development costs to the Commercial overhead pool and 31 percent to the Government overhead pool.  Id.  ¶ 7. Plaintiff's counsel stated during oral argument on the cross-motions for summary judgment that he believed Teknowledge arrived at these percentages based on either the historical division of revenue generated by the Commercial and Government segments or by headcount hours worked by employees in the two segments, although he did not know which. (O'Mahoney, Tr. 24).  From 2001 to 2005, Teknowledge proposed the use of TekPortal software in response to three Government Requests for Proposals, but the Government has never purchased the program.  (Stip. ¶ 5; Compl. ¶¶ 9-11).  During oral argument on the parties' cross-motions, the Court asked Plaintiff's counsel whether a nexus existed between

---

[1] The facts discussed in this opinion do not constitute findings of fact by the Court. The facts cited herein are either undisputed or alleged and assumed to be true for the purposes of the pending motions.

[2] In this opinion, the Court will refer to the oral argument transcript by lawyer and page as "Name, Tr. __" and to the parties' joint stipulations of fact as "Stip. __."

the TekPortal program and any of Teknowledge's ongoing contracts with the Government in 2001. Plaintiff's counsel admitted that "[n]one of the contracts actually at that time were utilizing the 'TekPortal' technology per se." (O'Mahoney, Tr. 19-20).

On July 25, 2005, the DCMA issued a notice of intent to disallow the amortized software costs from TekPortal. (Compl. ¶¶ 15, 17). A DCMA Contracting Officer issued a final decision and demand disallowing the costs on January 19, 2006. Id. On April 24, 2006, Plaintiff filed a complaint in this Court challenging the decision and seeking disallowed amortized software costs in the amount of $285,656. On July 28, 2008, Defendant filed a Motion for Summary Judgment under RCFC 56, and a Joint Stipulation of Facts on behalf of both of the parties. Plaintiff filed a Response and a Cross-Motion for Summary Judgment on August 28, 2008, and Defendant submitted a Reply on November 24, 2008. The Court heard oral argument via telephonic conference call on December 18, 2008.

## Standard for Decision

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. See RCFC 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1323 (Fed. Cir. 2001) (citation omitted). Summary judgment will not be granted if "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Liberty Lobby, 477 U.S. at 248; see also Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 971 (Fed. Cir. 2001) (citation omitted).

In reviewing a motion for summary judgment, the benefit of all presumptions and factual inferences runs in favor of the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Lathan Co., Inc. v. United States, 20 Cl. Ct. 122, 125 (1990) (citation omitted). The moving party bears the initial burden of showing an absence of evidence to support the opposing party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The non-movant must go beyond the pleadings to show specific facts that give rise to genuine issues of material facts. Matsushita, 475 U.S. at 586-87 (citing RCFC 56(e)). Disputes over facts that might affect the outcome of the case are considered "material." Liberty Lobby, 477 U.S. at 248. A dispute is "genuine" when a reasonable trier of fact could find in favor of the non-moving party based on the evidence presented. Id. If the non-moving party produces sufficient evidence to raise a genuine issue of fact material to the outcome of the case, the motion for summary judgment should be denied. See id. at 248-49 (citation omitted). With cross-motions for summary judgment, the Court evaluates each motion on its own merits and resolves all doubts and inferences against the party whose motion is being considered. Tenn. Valley Auth. v. United States, 60 Fed. Cl. 665, 670 (2004) (citing Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390-91 (Fed.Cir.1987)).

In the present case, the parties agree that the material facts are not in dispute. (See generally Stip. ¶¶ 1-8). The disagreement is whether the costs Plaintiff incurred in developing the TekPortal software program are allocable to the Government and therefore allowable as a matter of law. As the Court is faced with a purely legal question, the case is ripe for resolution by summary judgment.

### Discussion

Under the Federal Acquisition Regulation ("FAR"), the only costs a contractor can charge to a Government contract are "those allocable costs which are allowable pursuant to Part 31 [of the FAR] and applicable agency supplements." FAR 31.201-1(b) (2008). Defendant argues that Plaintiff's costs associated with developing the TekPortal program are not allocable to the Government. Even if they are allocable, Defendant asserts that they are not allowable because they are not reasonable and do not comply with generally accepted accounting principles and practices. Plaintiff contends that the costs are allocable because they: (1) benefit the Government and can be distributed to the Government in reasonable proportion to the benefit received; or (2) are necessary to the overall operation of Plaintiff's business. Furthermore, Plaintiff maintains that the costs are allowable because they are reasonable and comply with generally accepted accounting principles and practices. The Court concludes that Plaintiff's costs are not allocable as a matter of law, and therefore, Defendant is entitled to summary judgment in its favor.

### A. Plaintiff's Costs Are Not Allocable.

A cost is allocable to a government contract if it is "assignable or chargeable to one or more cost objectives on the basis of relative benefits received or other equitable relationship." FAR 31.201-4. Allocability is an accounting concept involving relationships between incurred costs and contracts to which these costs are charged. Boeing N. Am., Inc. v. Roche, 298 F.3d 1274, 1280 (Fed. Cir. 2002). The test for allocability is whether a sufficient "nexus" exists between the cost and a government contract. Id. at 1281 (citing Lockheed Aircraft Corp. v. United States, 375 F.2d 786, 794 (Ct. Cl. 1967)). Accordingly, a cost must meet one of three factors to be deemed allocable: (1) it is incurred specifically for a contract; (2) it benefits both the contract and other work, and can be distributed to them in reasonable proportion to the benefit received; or (3) it is necessary to the overall operation of the business, although a direct relationship to any particular cost objective cannot be shown. FAR 31.201-4.

In determining allocability, the Court must first assess whether the costs are direct or indirect costs. A contractor must charge so-called "direct costs" to a government contract under the first prong of the allocability test. See id. at 31.201-4(a). A direct cost is "any cost that is identified specifically with a particular final cost objective." FAR 2.101. If a cost is

specifically identified with other final cost objectives, they are to be treated as direct costs of those other cost objectives and not to be charged to the specific contract in question. See FAR 31.202(a). By contrast, an indirect cost is "any cost not directly identified with a single final cost objective, but identified with two or more final cost objectives or with at least one intermediate cost objective." FAR 2.101. In order for an indirect cost to be allocable to the Government, it must meet either prong two or three of the allocability test. See FAR 31.201-4(b), (c).

### 1. Incurred specifically for a contract

Plaintiff concedes that it does not meet the first prong of the allocability test because it never entered into a contract with the Government to develop, use or provide the TekPortal Program. Plaintiff argues instead that the TekPortal costs are indirect costs which meet the second and third prongs of the test. Defendant maintains that the TekPortal software development costs are indeed direct costs which must be charged to a corresponding government contract. According to Defendant, no specific contract exists to which Plaintiff can charge the costs because the Government never purchased the TekPortal program.

Defendant agrees that the TekPortal development costs include "labor costs, applied overhead, and fringe related to producing TekPortal and incurred by Teknowledge post technological feasibility." (Def.'s Reply at 5-6). Overhead and fringe costs are generally considered indirect costs. See generally Alliant Techsystems Inc. v. United States, 74 Fed. Cl. 566, 591 (2007) (viewing overhead as an indirect cost); United States v. Capital Sand Co., Inc., 466 F.3d 655, 658 (8th Cir. 2006) (same); Thermalon Indus., Ltd. v. United States, 51 Fed. Cl. 464, 484 (2002) (viewing indirect labor and fringe costs as indirect costs); Int'l Sci. & Tech. Inst., Inc. v. United States, 53 Fed. Cl. 798, 808 (2002) (treating fringe costs as indirect costs); United States v. Peavey Barge Line, 748 F.2d 395, 399 (7th Cir. 1984) ("Overhead expenses include those expenses that are necessary to keep a company or organization functioning as a going concern and that cannot be easily identified with any individual product or repair project.") (citing United Elec., Radio & Mach. Workers v. Oliver Corp., 205 F.2d 376, 387 (8th Cir. 1953)). Furthermore, Teknowledge did not incur the costs in developing TekPortal pursuant to a government contract, and therefore, the costs were not "identified specifically with a particular final cost objective." See FAR 2.101. Accordingly, the Court concludes that the costs in question are indirect costs which must be treated under the second and third prongs of the allocability test.

### 2. Benefits the contract and other work, and can be distributed to them in reasonable proportion to the benefit received

Plaintiff claims that the TekPortal development costs are allocable because they "[b]enefit[] both the contract and other work, and can be distributed to them in reasonable

proportion to the benefit received . . . ." See FAR 31.201-4 (b).[3]  According to Plaintiff, Courts have adopted a broad view of what constitutes a "benefit" to the Government. Plaintiff cites General Dynamics Corp., Electric Boat Division, ASBCA No. 18503, 75-2 BCA ¶ 11,521, and KMS Fusion, Inc. v. United States, 24 Cl. Ct. 582, 589, 591 (1991) for the respective principles that a potential increase in business or the reduction of indirect costs to a plaintiff qualify as benefits to the Government.  Plaintiff contends that, on a general level, the TekPortal development costs allow Teknowledge to execute its plan of maintaining its viability by both performing government contracts and developing software, which spreads the financial risk over the Commercial and Government segments.  On a specific level, Plaintiff asserts that by the time the Contracting Officer issued its final decision and demand, the amortized costs had enabled its Commercial segment to absorb close to $3,000,000 of total General and Administrative ("G&A") costs, a high percentage of which would otherwise have been allocated to government cost reimbursement contracts.

Defendant counters that the test for allocability is not some vague, prospective potential benefit to the Government.  In support of its argument, Defendant cites FMC Corp. v. United States for the proposition that remote and insubstantial benefits to the Government do not meet the requirement of a benefit.  853 F.2d 882, 886 (Fed. Cir. 1988).  Defendant emphasizes that the Government has never purchased TekPortal, and Plaintiff admits that the costs "were not related to any specific purchase order or contract, but rather resulted from work done on speculation in anticipation of acquiring both government and commercial purchase orders and contracts." (Pl.'s Resp. at 6).

The Court concludes that the Government has not received a benefit from the TekPortal technology.  In Boeing, the Federal Circuit held that the test for allocability is whether a sufficient "nexus" exists between a given cost and a *government contract*. 298 F.3d at 1281 (quoting Lockheed, 375 F.2d at 794) (emphasis added).  The word "benefit" as defined in the allocability test requires some showing that the cost relates to a government contract, not that it promotes the Government's public policy interests.  See id. at 1284.

While it is true that courts have adopted a broad view of what constitutes a nexus, the Court agrees with Defendant that remote and insubstantial benefits to the Government do not meet the requirement.  See FMC Corp., 853 F.2d at 886.  Furthermore, the Court notes that in each of the cases cited by the parties, a nexus existed between the costs incurred and some underlying government contract.  E.g. KMS Fusion, Inc., 24 Cl. Ct. at 591-92 (holding that the cost of paying government affairs consultants was allocable to a United States Department of Energy ("DOE") contract because the Government benefitted in a general sense by gaining additional information from the consultants on which it could base its

---

[3] The Court does not address the reasonableness of the cost allocation because Defendant has met its burden of proving that the costs incurred did not benefit a government contract or other work.

procurement decisions, and the DOE contract benefitted in a specific sense by seeing a reduction of indirect costs allocated to the contract where marketing efforts succeeded in bringing in additional business for the company); FMC Corp., 853 F.2d at 886 (denying allocation of litigation expenses related to the TRIDENT contract to non-TRIDENT contracts); General Dynamics Corp., 75-2 BCA at 54,974 (ruling that bid and proposal expenses associated with the arctic tanker program were allocable to the underlying arctic tanker contract because they were "basic to appellant's viability as a commercial enterprise"); Lockheed, 375 F.2d at 796 (finding the cost of personal property taxes assessed on the facilities used by plaintiff to perform the government contract allocable because the Government benefitted on a general level from Lockheed's fulfillment of its responsibilities as a corporate citizen to the local community and, on a specific level, from the services Lockheed provided to the community).

During oral argument on the parties' cross-motions, Plaintiff's counsel admitted that no nexus existed between the government contracts Teknowledge held in 2001 and the TekPortal program. The only benefits Plaintiff cites are the general viability of the company and reduced indirect costs to its Government segment. In the Court's view, Plaintiff has misconstrued the definition of "benefit" under the FAR and failed to show any connection between the TekPortal program and a current government contract. Therefore, the Court finds that any benefit to the Government resulting from the TekPortal development costs would be too remote and insubstantial to deem them allocable. See FMC Corp., 853 F.2d at 886.

### 3. Necessary to the overall operation of the business

Plaintiff alleges further that the TekPortal development costs are allocable because they are "necessary to the overall operation of the business." FAR 31.201-4 (c). To meet the third prong of the allocability test, "the contractor must show a benefit to government work from an expenditure of a cost that it claims is 'necessary to the overall operation of the [contractor's] business.'" Caldera v. Northrop Worldwide Aircraft Servs., Inc., 192 F.3d 962, 972 (Fed. Cir. 1999) (citations omitted).

Plaintiff maintains that the TekPortal costs incurred "were necessary to create a product that could be sold in the marketplace" and analogizes this case to KMS Fusion, where the Court found allocable the cost of hiring government affairs consultants in part because the costs brought in new business for the company. Defendant rejects the comparison and argues that Plaintiff has provided no factual evidence showing how the TekPortal program keeps the company viable.

The Court agrees with Defendant. First, Plaintiff has omitted a key part of the allocability analysis. Even under the third prong of the allocability test, a contractor must

-7-

show some nexus to a government contract.  In KMS Fusion, the Court held that the cost of hiring government affairs consultants benefitted the specific DOE contract by reducing indirect costs allocated to the contract. 24 Cl. Ct. at 591-92.  Here, Plaintiff admits that no such nexus to a government contract exists.  Second, Plaintiff has proffered no evidence explaining how TekPortal keeps Teknowledge afloat or will bring in new business in the future.  Accordingly, the Court concludes that Plaintiff has failed to show that the TekPortal development costs are allocable as a matter of law.

### B.  Plaintiff's Costs Are Not Allowable.

Under the FAR, a cost is allowable only if it is:  (1) reasonable; (2) allocable; (3) complies with the Cost Accounting Standards ("CAS") or generally-accepted accounting principles and practices; (4) complies with the terms of the contract; and (5) complies with any limitation in FAR subpart 31.2.  FAR 31.201-2.  Allowability addresses whether a particular cost should be recoverable as a matter of public policy.  Boeing, 298 F.3d at 1281 (citations omitted).  Because the Court has determined that the TekPortal development costs are not allocable to a government contract, the costs in question are not allowable as a matter of law.

### Conclusion

For the reasons explained above, Defendant's Motion for Summary Judgment is GRANTED, and Plaintiff's Cross-Motion for Summary Judgment is DENIED.  The Court hereby dismisses Plaintiff's Complaint with prejudice.  No costs.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge